IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CATHERINE L. KING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:11-cv-1387-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Catherine L. King seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

## Background

Plaintiff alleges that she is disabled due to a variety of ailments, including lupus, hypertension, knee problems, and major depression. *See* Dkt. No. 11 [Administrative Record ("Tr.")] at 43. After her applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *See id.* at 63, 76, 80. That hearing was held on February 5, 2009. *See id.* at 37. At the time of the hearing, Plaintiff was 58 years old. *See id.* at 43. She is a high school graduate, *see id.* at 31, with some college, *see id.* at 131, and has past work experience as an abstract clerk and inventory clerk, *see id.* at 31. Plaintiff has not engaged in substantial gainful activity since March 1, 2007. *See id.* at 23.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See id.* at 33. Although the medical evidence established that Plaintiff suffered from hypertension, mild degenerative joint disease, obesity, and depression, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 23-24. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of medium work, but could not return to her past relevant employment. *See id.* at 27-28, 31. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a laundry worker, industrial sweeper/cleaner, or floor buffer -- jobs that exist in significant numbers in the national economy. *See id.* at 32. Given Plaintiff's age, education, and exertional capacity for medium work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.* at 32-33.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed. *See id.* at 12-14.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on three general grounds: (1) the ALJ failed to properly consider or discuss the limitations of Plaintiff's severe obesity as required by SSR 02-1p; (2) the Appeals Council failed to consider new and material evidence of her disability; and (3) the ALJ improperly rejected the opinions of one of the examining physicians. *See* Dkt. No. 17.

The Court determines that the hearing decision is affirmed in all respects.

2

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the

national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

5

that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I.   <u>Consideration of Obesity in the ALJ's RFC Assessment</u>

Plaintiff first contends that the ALJ applied an improper legal standard in determining her residual functional capacity because the ALJ allegedly failed to properly consider or discuss the limitations associated with her obesity. *See* Dkt. No. 17 at 19-24; Dkt. No. 22 at 1-4. Under the social security regulations, an ALJ must (1) assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" and (2) explain how she reached her conclusions on whether obesity caused any physical or mental limitations. SSR 02-1p, 2000 WL 628049, at *6-*7 (Sept. 12, 2001). In her decision, the ALJ noted that Plaintiff's obesity "exacerbates her impairments" and stated that "the effects of obesity upon the [Plaintiff's] ability to function were considered in accordance with Social Security Ruling 02-1p and are reflected in the residual functional capacity assessed in this case." Tr. at 30. Plaintiff contends that this was not enough to comply with SSR 02-1p, which provides that, "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p, 2000 WL 628049, at *6-*7.

The ALJ found that Plaintiff's hypertension, mild degenerative joint disease, obesity, and depression were severe impairments. *See* Tr. at 23. The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to lift 50 pounds occasionally

and 25 pounds frequently, to stand and walk for six of eight hours, to sit for six of eight hours, to occasionally kneel, crouch and balance, and to frequently stoop and crawl. The ALJ's RFC assessment further found that Plaintiff had the ability to have occasional contact with coworkers, supervisors and the public, and from a mental standpoint, retained the ability to apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form, could deal with problems involving several concrete variables in or from standardized situations, and retained limited mathematical and verbal skills. *See id.* at 27-28.

In her discussion of the RFC finding, the ALJ recounted Plaintiff's hearing testimony. *See id.* at 28. Plaintiff alleged she was disabled due to lupus, depression, hypertension, and generalized pain. *See id.* Plaintiff testified that she has trouble concentrating long enough to complete tasks such as cooking and cleaning and often starts multiple tasks without completing any of them. *See id.* Plaintiff's daughter and son help her around the house, but she does not really interact with her family. *See id.* She does not sleep well at night but falls asleep during the day and is frequently tearful. *See id.* She experiences pain in her knees, elbows, chest, legs, and feet. *See id.* She also, about twice a week, experiences headaches that cause her to weep with pain and stay inside her house. *See id.* She was laid off from her job with Blue Cross Blue Shield where she worked for 22 years; she did not quit for medical reasons. *See id.* She goes to church, but her son drives her. *See id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements

7

concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. *See id.* 18.

The ALJ then discussed Plaintiff's hypertension, degenerative joint disease, and depression. *See id.* at 29-30. Plaintiff testified that she was first diagnosed with hypertension in the early 1990s and her hypertension is currently treated with medication. *See id.* at 29. According to the medical evidence, Plaintiff's blood pressure was recorded six times from 2007 through 2009 and was elevated at five of those six visits. *See id.* However, Plaintiff testified that she had been able to work for over a decade with high blood pressure and there was no medical evidence in the record of heart trouble, cerebral vascular accident, transient ischemic attack, renal disease, or claudication resulting from hypertension. *See id.* The ALJ explained that she gave Plaintiff the benefit of the doubt and assumed that Plaintiff's headaches and occasional weakness, dizziness and fatigue could be caused by hypertension and thus limited the RFC assessment to include only occasional climbing of ramps and stairs, prohibited climbing ladders, ropes or scaffolds, and included limitations on reasoning, math, and language to accommodate those symptoms. *See id.*

The ALJ noted there was no medical evidence in the record that Plaintiff sought medical treatment for bilateral knee pain before her initial application. *See id.* at 29. Plaintiff continued to work for decades after her claimed onset date of bilateral knee pain in 1980. *See id.* During a consultative examination on March 23, 2007, Plaintiff reported that she injured her knees in a fall in 2006 and that she experienced intermittent pain, stiffness, and swelling. *See id.* The examiner noted slight soft tissue

8

deformities and slight crepitance. *See id.* There was also decreased range of motion, which was mainly due to Plaintiff's thigh size. *See id.* An x-ray of Plaintiff's right knee revealed minimal narrowing of the medial and lateral compartments, a small to moderate osteophyte, and no joint effusion. *See id.* The examiner observed that, despite these findings, Plaintiff was able to ambulate effectively without the use of an assistive device, and she reported that she was independent in all her activities of daily living. *See id.* The ALJ also noted that Plaintiff complained of knee pain on only one other occasion, in November 2008, and treatment notes indicate that Plaintiff had good range of motion, was able to fully bear weight on both sides, and was prescribed nothing stronger than Naproxen to manage the pain. *See id.*

The ALJ concluded that, because Plaintiff was able to ambulate effectively, sought very limited medical care for her knee pain, and was prescribed only a non-steroidal anti-inflammatory medication, Plaintiff presented herself as substantially more limited at the hearing due to her degenerative joint disease than she actually is. *See id.* Nevertheless, the ALJ again gave Plaintiff the benefit of the doubt on some of her complaints of knee pain and thus limited the RFC assessment to medium work, with only occasional climbing of ramps and stairs, kneeling, crouching and balancing, and prohibiting the climbing of ladders, ropes, or scaffolds. *See id.*

The ALJ observed that the medical evidence of record indicated that Plaintiff first sought treatment for symptoms of depression in February 2007, after she had not worked since May 2004. *See id.* at 29. She had trouble sleeping and concentrating and was prescribed medication to help her sleep. *See id.* at 29-30. She was diagnosed with

9

major depressive disorder without psychotic features in May 2007, and her global assessment of functioning score at that time was 49. *See id.* at 30. Plaintiff attended regular psychological counseling and medication check-ups throughout 2007 and 2008 and continued to take medication for her depression and sleeplessness. *See id.* Plaintiff had not always been compliant with her psychiatric medications, however. *See id.*

At a psychological evaluation in March 2007, Plaintiff stated that she was not taking her medication, even though she was still experiencing depression and insomnia, because she did not want to get addicted. *See id.* The examiner described Plaintiff's depression as "situational" depression due to unemployment, outstanding debt, harassment from bill collectors, and the lack of active mental health treatment. *See id.* The examiner stated that Plaintiff's depression could be expected to remit with a return to the workforce. *See id.* At that time, Plaintiff's global assessment of functioning was assessed at 60. *See id.* The ALJ observed that treatment notes reflect that Plaintiff indicated at various mental health appointments that she was able to do housework, apply for jobs over the computer, go to church on Sunday, spend time with her family, and she wanted to get out of the house more. *See id.*

Based on these facts, the ALJ concluded that Plaintiff presented herself at the hearing as being substantially more limited due to her symptoms of depression, such as difficulty concentrating and completing tasks and tearfulness, than she actually is. *See id.* Thus, the RFC assessment includes findings that Plaintiff retains the ability to tolerate occasional contact with coworkers, supervisors, and the public and retains limited reasoning, math, and language capabilities. *See id.* The ALJ then explained:

> In addition to these physical and mental impairments, the claimant is a morbidly obese individual which exacerbates her impairments. The most recent treatment note indicates that the claimant is five feet five inches tall and weights 272 pounds [cite omitted]. Her body mass index calculates to over 45. The effects of obesity upon the claimant's ability to function were considered in accordance with Social Security Ruling 02-1p and are reflected in the residual functional capacity assessed in this case.

*Id.* at 30.

In her opening brief, Plaintiff contends that the ALJ erred by not going further to discuss obesity in detail as the ALJ did with regard to Plaintiff's other severe impairments or to consider how Plaintiff's severe obesity impacted the other severe impairments. *See* Dkt. No. 17 at 19-20, 22-24. The only evidence to which Plaintiff points in support of this argument is a questionnaire response in which Plaintiff describes painful and swollen knee joints that limit her ability to walk and cause to her to require assistance rising from chairs, *see* Tr. at 128, and Plaintiff's friend's statement that, while Plaintiff does some things around the house, some days she just has to rest when her knees hurt, *see id.* at 139.

The next paragraph in the ALJ's decision addresses her finding that Plaintiff is not credible insofar as the degree of pain and limitation alleged. *See id.* at 30. Plaintiff contends that this is contrary to SSR 02-1p, which provides that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." SSR 02-1p, 2000 WL 628049, at *6. The reasons that the ALJ gave for her credibility finding were based on evidence that Plaintiff continued to seek education

11

and training and to find employment, which demonstrated Plaintiff did not believe she was disabled from all work, and on Plaintiff's willingness to increase the amount of time that she spent doing yard work, walking, and attending area parks and recreation centers. *See id.* at 30-31.

In her reply brief, Plaintiff contends that the RFC must contain additional limitations directly attributable to obesity. *See* Dkt. No. 22 at 1-4; *see Martinez v. Astrue*, No. 2:10-cv-102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011) (holding that ALJ erred by finding plaintiff had severe impairment as a result of surgical re-attachment of fingers without making corresponding RFC determination as to whether that severe impairment imposed any manipulative limitations). Plaintiff bases her argument on SSR 02-1p's statement that "we will consider any functional limitations resulting from obesity in the RFC assessment, *in addition to* any limitations resulting from any other physical or mental impairments we identify." SSR 02-1p, 2000 WL 628049, at *7 (emphasis added).

But SSR 02-1p also provides that "[o]besity in combination with another impairment *may or may not* increase the severity or functional limitations of the other impairment," *id.* at *6 (emphasis added), and Plaintiff fails to identify any additional limitations attributable to her obesity. The record is clear that the ALJ properly considered the effects of obesity on Plaintiff's other impairments in determining Plaintiff's residual functional capacity. *See Gannon v. Astrue*, No. 3:07-cv-1057-N, 2008 WL 4490738, at *9 (N.D. Tex. Oct. 3, 2008) (where substantial evidence existed to support the conclusion that plaintiff's obesity was properly considered in determining

12

plaintiff's residual functional capacity, failure of the ALJ to explicitly address plaintiff's obesity was not error); *Brown v. Astrue*, No. 3:08-cv-0255-D, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009) ("Although the ALJ did not explicitly articulate or rely on any cumulative effects of Brown's obesity, the record indicates that her obesity was factored into the RFC determination."); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (concluding that "any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case" where, "although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions").

The ALJ found Plaintiff's morbid obesity to be a severe impairment, and, when discussing Plaintiff's relevant medical history and other severe impairments, the ALJ noted Plaintiff's obesity and referred to almost every reference to obesity in the medical record with the exception of a consulting examiner's description of Plaintiff's weight gain over the years and statement that "with increasing weight there was increasing pain in both knees." Tr. at 287. But the ALJ did discuss the consultant's finding in the same report that the decrease in range of motion in both knees was mainly due to Plaintiff's thigh size*, see id.* at 29, 288, which is attributable to Plaintiff's obesity.

And, while the Fifth Circuit "has expressed a strong preference for requiring the social security administration to follow its own internal procedures," the Court of Appeals also requires "a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir.

13

2002). Here, even if the ALJ erred by failing to discuss independently the effect of Plaintiff's obesity as related to her other impairments, Plaintiff has not shown that she was prejudiced. Nothing in the record suggests that Plaintiff's obesity caused greater limitations than those set forth in the RFC assessment, and therefore no basis exists for concluding that the ALJ's failure to properly consider Plaintiff's obesity would have changed the outcome of the disability determination. The error was, at most, harmless. *See Johnson v. Astrue*, No. 3-08-cv-1488-BD, 2010 WL 26469, at *6 (N.D. Tex. Jan. 4, 2010); *Gannon*, 2008 WL 4490738, at *9.

II.     Consideration of State Agency Medical Consultants' Opinions

Plaintiff next contends that the ALJ did not follow the proper legal standards in considering the opinions of the State Agency Medical Consultants ("SAMC") because she allegedly ignored, and made RFC findings that conflict with, those opinions. *See* Dkt. No. 17 at 7, 24-27; Dkt. No. 22 at 4-5.

Plaintiff's physical RFC was assessed by two SAMCs: Moira Dolan, M.D, *see* Tr. at 349-56, and John Durfor, M.D., *see id.* at 312-19. Dr. Durfor rendered his opinion on August 9, 2007, and Dr. Dolan rendered hers on December 21, 2007. *See id.* at 319, 356. Both SAMCs reviewed and referenced the July 17, 2007 consultative examination report of Peter Louis, M.D. *See id.* at 287-89 (Louis), 313 (Durfor), 356 (Dolan). The opinions of Dr. Durfor and Dr. Dolan were similar but not identical. According to Plaintiff, the one significant difference between the two SAMC opinions was the limitation on Plaintiff's ability to lift and carry weights on a frequent basis. *See* Dkt. No. 17 at 27. Dr. Durfor opined that Plaintiff could lift or carry 10 pounds frequently,

14

while Dr. Dolan opined that she could frequently lift or carry 25 pounds. *See* Tr. at 313, 350. Plaintiff argues that this distinction is important because the ability to frequently lift 25 pounds is a critical task necessary for medium work. *See* Dkt. No. 17 at 27. Other differences between the two SAMC reports are that Dr. Durfor opined Plaintiff could frequently balance, stoop, and crouch, *see* Tr. at 351, while Dr. Dolan opined that she could balance, stoop and crouch occasionally, *see id.* at 314.

The ALJ's RFC assessment is not identical to that of either SAMC, *compare id.* at 27-28, *with id.* at 312-19, 349-56, and Plaintiff argues the ALJ "melded" both SAMC opinions together to form her RFC, *see* Dkt. No. 17 at 27. The ALJ determined that Plaintiff could frequently lift or carry 25 pounds, could occasionally balance, and frequently stoop or crawl. See Tr. at 27. The ALJ reached a different conclusion than both SAMCs concerning Plaintiff's ability to crawl, finding that Plaintiff could crawl frequently while both SAMCs opined that she could crawl occasionally. *See id.* at 27, 314, 351. In her decision, the ALJ stated that she considered the administrative findings of fact made by the SAMCs and consultants and weighed them as statements from non-examining experts. *See id.* at 31. The ALJ then expressly referred to the "reconsidered review" in which the SAMCs concluded Plaintiff was capable of performing medium work with some postural limitations and cited to Dr. Dolan's report, but makes no express reference or citation to Dr. Durfor's report. *See id.* at 31.

"As factfinder, the ALJ has the sole responsibility for weighing the evidence and choosing whichever limitations are most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ is not bound by the state agency physicians'

15

opinions, but she may not ignore them and must explain in her decision the weight given to those opinions. *See* SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996); *Helbing v. Astrue*, No. 4:11-cv-704-Y, 2012 WL 6719469, at *12 (N.D. Tex. Oct. 29, 2012).

In this case, the ALJ explained that she weighed the SAMCs' opinions as statements from non-examining experts, and the ALJ clearly gave the most recent SAMC opinion greater weight. *See id.* at 31. The ALJ also resolved the conflicts between the two SAMC opinions by choosing the limitations that she, as the fact-finder, considered to be most supported by the record. The ALJ is free to reject all or part of a physician's opinion when the overall evidence supports a contrary conclusion, *see Martinez*, 64 F.3d at 176, and is not always required to provide a detailed analysis articulating the evidence that supports her decision and discussing the evidence that was rejected, *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

The Court concludes that the ALJ properly applied the standard set forth in SSR 96-6p for considering SAMC opinions.

III.    <u>Failure of Appeals Council to Consider New and Material Evidence</u>

Plaintiff next contends the RFC determination is not supported by substantial evidence because the Appeals Council failed to consider new and material evidence concerning sleep apnea. *See* Dkt. No. 17 at 28-30; Dkt. No. 22 at 5-8; Tr. at 4; Dkt. No. 18. Plaintiff's counsel, who was retained after the request for review was denied, sought to reopen the case and submitted additional medical evidence to the Appeals Council. *See* Tr. at 4-7. The Appeals Council denied Plaintiff's attorney's request to

16

reopen without acknowledging that it had received or considered the additional evidence, *see id.* at 1, and the additional evidence was not included in the Administrative Record, *see* Dkt. No. 11. Plaintiff submitted the additional evidence to this Court in an appendix to her opening brief. *See* Dkt. No. 18.

The social security regulations provide a claimant an opportunity to submit new and material evidence to the Appeals Council for consideration when deciding whether to grant a request for review of an ALJ's decision. *See* 20 C.F.R. § 404.970(b). Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005); *see also Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 336 (N.D. Tex. 2003). Based on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it. *See Higginbotham*, 405 F.3d at 335 n.1.

A court considering the final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *See Higginbotham v. Barnhart,* 163 F. App'x 279, 281-82 (5th Cir. 2006); *Gonzalez v. Comm'r of Soc. Sec. Admin.,* No. 3:10-cv-2003-O-BF, 2012 WL 1058114, at *10 (N.D. Tex. Jan. 26, 2012), *rec. adopted*, 2012 WL 1065459 (N.D. Tex. Mar. 29, 2012). New evidence justifies a remand only if it is material. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003); *Moore v. Astrue*, No. 3:07-cv-2017-B, 2009 WL 5386134, at

17

*3 (N.D. Tex. Nov. 13, 2009), *rec. adopted*, 2010 WL 165992 (N.D. Tex. Jan. 13, 2010). Evidence is "material" if: (1) it relates to the time period for which the disability benefits were denied and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *See Moore*, 2009 WL 5386134, at *3.

The additional evidence presented to the Appeals Council includes medical evidence concerning sleep apnea. But Plaintiff never alleged that she was disabled due to sleep apnea. *See* Tr. at 127, 154, 177. However, the new evidence shows that Plaintiff underwent sleep studies in July 2008 and January 2009, *see* Dkt. No. 18 at 3-5, 15-18, and was diagnosed with moderate to severe sleep apnea, *see id.* at 17. She was prescribed a C-PAP machine because tests showed that it provided significant improvement with continuous airway pressure, but she was unable to afford it. *See id.* at 2, 5. While an impairment that can be remedied or controlled with treatment is not considered to be disabling, *see Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988), a treatment that an indigent person cannot afford is no more a cure for her condition than if it had never been discovered, *see Lovelace,* 813 F.2d at 59.

Plaintiff argues that, had the Appeals Council considered the new evidence concerning sleep apnea, the disability finding might have been different because the symptoms of sleep apnea – lack of concentration, daytime somnolence, fatigue, loss of mental clarity, and slowed reactions – are closely related to those of lupus, depression, and, most importantly, obesity. *See* Dkt. No. 17 at 29-30; Dkt. No. 22 at 6-7. Thus,

18

Plaintiff argues, some of the symptoms the ALJ attributed to lupus, depression, and obesity may in fact be attributable to sleep apnea.

The Court is not persuaded. Here, the new evidence – that Plaintiff has moderate to severe sleep apnea – is simply not so inconsistent with the ALJ's findings that it undermines or would have changed the outcome of the disability determination, and the ALJ's decision is supported by substantial evidence.

## Conclusion

The hearing decision is affirmed in all respects. Plaintiff's Motion for Summary Judgment [Dkt. No. 16] is DENIED, and Defendant's Cross Motion for Summary Judgment [Dkt. No. 23] is GRANTED.

DATED: August 28, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE